[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-10025

_____

D. C. Docket No. 07-00033-CR-2

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 12, 2010
JOHN LEY
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DENNIS MITCHELL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(March 12, 2010)

Before TJOFLAT, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Defendant-appellant Dennis Mitchell appeals his conviction and 262-month

sentence for possession of a firearm by a convicted felon. On appeal, we must

decide whether (1) the delays in Mitchell's case violated his constitutional and statutory rights to a speedy trial, (2) the court should have suppressed evidence seized during a traffic stop, and (3) the sentence imposed was proper. After a thorough review of the record and with the benefit of oral argument, we affirm.

I.

On April 14, 2005, Brunswick Police Officer Rodrick Nohilly stopped a car that failed to yield at a stop sign. Nohilly issued Mitchell, the driver, a citation. He then turned his attention to Kalvin Mangram, the only passenger, who had an open container of beer. After difficulty confirming Mangram's identity, Nohilly arrested Mangram for giving false information and conducted a search of the car incident to arrest. Therein Nohilly found firearms and arrested Mitchell for possession of a firearm. Mitchell was placed in state custody, where he remained until November 17, 2006.

A. First Indictment

On July 14, 2005, Mitchell and Mangram were charged in a three-count indictment. Count 2 charged Mitchell with possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k). Count 3 charged him with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e). Trial was set for November 7, 2005.

Mitchell moved to suppress the firearm seized during the traffic stop. According to testimony from the suppression hearing and a videotape of the stop, just after midnight on April 14, 2005, Nohilly pulled Mitchell over for failing to yield. Nohilly approached the car and observed an open container of beer in Mangram's lap. He asked Mangram for identification and instructed him to empty the container. Neither Mangram nor Mitchell appeared intoxicated, and Nohilly did not intend to cite either of them for the open-container violation.

Officers Cothran and Wilson arrived as back-up. Wilson contacted dispatch about Mangram's identification and to confirm ownership of the car, revealing that the car did not belong to Mitchell or Mangram. Nohilly wrote Mitchell a citation for failure to yield and returned his license. When the officers were unable to confirm Mangram's date of birth, Nohilly arrested Mangram for giving false information to a police officer.

Although he had no intention to cite Mitchell for any other violations, Nohilly asked Mitchell if the officers could search the car. Mitchell refused, stating the car did not belong to him. Nohilly conducted the search anyway as a search incident to arrest and found firearms and hunting masks. Nohilly asked Mitchell if he had any prior convictions, and Mitchell responded that he had been "in trouble."

Based on the evidence presented, the magistrate judge recommended denying the motion to suppress. On November 4, 2005, the district court adopted the magistrate judge's recommendation and denied Mitchell's motion to suppress, concluding that the police were justified in arresting Mangram and searching the car based on Mangram's false information.

The government moved for a continuance on October 27. The court granted and reset the trial for December 19, 2005. Due to a scheduling conflict for the court, the trial was rescheduled for January 12, 2006. In early January, however, the court continued the trial date until further notice.

On February 13, 2006, while the indictment was pending, Mitchell's case was transferred to a different judge. On May 31, the case was reassigned a second time. The record shows a flurry of activity from the time of the indictment until February 13, 2006, but there was no action on the case from February 2006 through May 2007. Although Mitchell had completed his term in state custody on November 17, 2006, he remained in federal custody while the federal indictment was pending.

On May 23, 2007, the district court *sua sponte* dismissed the indictment without prejudice for violations of Mitchell's constitutional and statutory rights to a speedy trial under the Sixth Amendment and the Speedy Trial Act, 18 U.S.C.

4

§ 3161. The court noted that the delays were due to oversight by court staff and not to any fault of the parties. Mitchell moved for reconsideration, arguing that the indictment should have been dismissed *with* prejudice. After considering the seriousness of the offense, the circumstances leading to dismissal of the case, the administration of justice, and the lack of prejudice, *see Barker v. Wingo*, 407 U.S. 514 (1972), the court denied the motion. With the court's dismissal of the indictment, Mitchell was released from custody.

B. Second Indictment

On June 7, 2007, the government filed a second indictment against Mitchell and Mangram. Count 3, the sole count against Mitchell, charged a violation of 18 U.S.C. §§ 922(g) and 924(e), possession of a firearm by a convicted felon. Mitchell was rearrested on October 7, 2007 and held without bond. Mitchell filed a plea in bar, arguing that the prior indictment should have been dismissed with prejudice for violations of the Speedy Trial Act. According to Mitchell, he had been incarcerated 411 days beyond the time allotted for a speedy trial before the first indictment was dismissed.[1] Although he conceded that the court had

---

[1] In his plea in bar, Mitchell calculated the time as follows: As of January 23, 2006, only 20 days had run under the Speedy Trial Act. Another 284 days ran from February 10, 2006 until November 21, 2006. From November 27 through May 23, 2007, another 177 days ran. The total was 481 days, which was in excess of the Act's 70-day time frame by 411 days. The government does not dispute these calculations.

5

addressed his arguments in the prior case, he asserted that the prejudice he had suffered required the first indictment be dismissed with prejudice, thus preventing the government from proceeding on the second indictment. On November 9, 2007, Mitchell refiled his motion to suppress the firearm seized during the traffic stop.

At the second suppression hearing, the court took judicial notice of the prior proceedings. The government indicated that it had no new evidence to offer, and Nohilly again testified. Defense counsel asked whether Nohilly had any safety concerns at the time of the stop and Nohilly responded that he had no other concerns except for those normally present during a traffic stop.

In supplemental briefing after the hearing, Mitchell argued that Nohilly unlawfully questioned Mangram during a traffic stop, the detention was unlawful and unreasonable, and Nohilly lacked probable cause for the search. Mitchell further argued that, because the open-container violation did not constitute an arrestable offense, there was no permissible search incident to arrest.

The government responded that the district court had addressed the search in the prior case and had denied the motion to suppress. The government also argued that Mitchell could not challenge the dismissal of his indictment because the court had addressed it in the previous case. In reply, Mitchell reiterated that he had been in jail another 204 days during the pending indictment and this length of time was

presumptively prejudicial.

Over Mitchell's objections, the district court adopted the magistrate judge's recommendation and denied both the plea at bar and the motion to suppress for the reasons given in the previous orders.

### C. Trial and Sentencing

Mitchell's case proceeded to trial in August 2008. At that time, Nohilly testified that as he approached the car following a traffic stop, he observed an open container of beer in Mangram's possession. When Mangram could not produce identification, and Nohilly could not confirm Mangram's date of birth, Nohilly placed Mangram under arrest for giving a false date of birth and placed him in Cothran's patrol car. Nohilly issued Mitchell a citation for failure to yield. Nohilly then conducted a search incident to arrest looking for any contraband "within the wingspan area." Nohilly found a loaded firearm and ammunition under the passenger seat and another weapon on the front seat between the driver and passenger seats. Mitchell was arrested after Nohilly confirmed he was a convicted felon.

Mangram testified against Mitchell, explaining that the two men had planned to rob and attack a man with whom Mangram had a dispute. The jury convicted Mitchell of possession of a firearm.

The probation officer prepared a presentence investigation report ("PSI"), assigning a base offense level of 24 under U.S.S.G. § 2K2.1(a)(2) because Mitchell had two prior crimes of violence: attempt to commit burglary and burglary. The probation officer added two levels because the firearm had an obliterated serial number, § 2K2.1(b)(4), and four levels because Mitchell possessed the firearm in connection with felony offenses of armed robbery and drug possession, § 2K2.1(b)(5). The resulting adjusted offense level was 30; Mitchell's criminal history, however, qualified him for career-offender status, § 4B1.4, which increased his offense level to 34 and required a criminal history category VI. In addition to his status as a career criminal under § 4B1.4, the number of points assigned to the prior convictions also placed Mitchell in category VI. Mitchell's adjusted offense level and criminal history category yielded a guidelines range of 262 to 327 months' imprisonment. Under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), Mitchell faced a statutory mandatory minimum sentence of 15 years' imprisonment. 18 U.S.C. § 924(e).

Mitchell filed several objections to the PSI, including factual challenges based on the testimony at trial. Relevant to this appeal, Mitchell also argued that (1) burglary did not qualify as a crime of violence; (2) the jury did not consider whether the serial number was obliterated and thus the enhancement should not

8

apply; and (3) he should not receive an enhancement as an armed career criminal because his prior convictions did not qualify and there was no evidence that he had committed a crime of violence at the time of the instant offense.

The probation officer responded to each objection as follows: (1) relevant precedent identified burglary as a crime of violence; (2) the jury was not required to make findings regarding the serial number for purposes of applying the enhancement; and (3) the facts were sufficient to establish Mitchell's status as an armed career criminal because his prior convictions for robbery and assault were crimes of violence.

At sentencing, Mitchell reiterated his various objections. He then argued that the 18 U.S.C. § 3553(a) sentencing factors supported a sentence at the mandatory minimum of 15 years rather than within the guidelines range of 262 to 327 months' imprisonment. The court overruled the objections for the reasons given in the probation officer's responses. After listening to the parties and considering the § 3553(a) factors, the court sentenced Mitchell to 262 months' imprisonment. The court stated that the low end of the guidelines range was sufficient to meet the sentencing goals and there was no reason to depart from the range in light of Mitchell's criminal history.

Mitchell raises three issues on appeal: whether (1) the delays in the case

constituted a Sixth Amendment or Speedy Trial Act violation, (2) the court should have suppressed the firearm, and (3) the sentence imposed was proper. We will address each in turn.

## II.

We review questions of law *de novo*. *United States v. Schier*, 438 F.3d 1104, 1107 (11th Cir. 2006). "Determination of whether a defendant's constitutional right to a speedy trial has been violated is a mixed question of law and fact." *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006) (quotation marks and citation omitted). A district court's denial of a motion to suppress evidence is also a mixed question of law and fact. We review legal conclusions *de novo* and factual findings for clear error. *Id.* In our review of a motion to suppress, we view the evidence in the light most favorable to the prevailing party–in this case the government–and we may consider the entire record. *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007); *United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007). We review a district court's interpretation and application of the sentencing guidelines *de novo*. *United States v. Chavarriya-Mejia*, 367 F.3d 1249, 1251 (11th Cir. 2004).

## III.

A. Speedy Trial Act

The Speedy Trial Act states:

> [I]n any case in which a plea of not guilty is entered, the trial of a defendant . . . shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).[2]   When a trial is not commenced within the prescribed period of time, "the information or indictment shall be dismissed on motion of the defendant."  18 U.S.C. § 3162(a)(2).

"[T]he proper dismissal sanction to be imposed in each case is a matter left to the exercise of the sound discretion of the trial judge after consideration of the factors enumerated in the statute," and the judgment of the district court "should not lightly be disturbed" if the district court has considered all of the statutory factors and if the underlying factual findings are not clearly erroneous.  *United States v. Knight*, 562 F.3d 1314, 1322 (11th Cir. 2009).  (citations omitted).  A district court must consider three factors when determining whether to dismiss an indictment with or without prejudice: (1) "the seriousness of the offense"; (2) "the facts and circumstances of the case which led to the dismissal"; and (3) "the impact of a reprosecution on the administration of this chapter and on the administration of justice."  18 U.S.C. § 3162(a)(2); *Knight*, 562 F.3d at 1322.  Still, in order to

---

[2]  The statute excludes certain time such as the time during which motions are pending.  18 U.S.C. § 3161(h)(1).

11

prevent abuses of the Speedy Trial Act's deadlines, this court requires a showing of "some affirmative justification" by the government to warrant a dismissal without prejudice. *United States v. Russo*, 741 F.2d 1264, 1267 (11th Cir. 1984).

Criminal cases in the Southern District of Georgia "shall be processed in accordance with the provisions of the 'Speedy Trial Act of 1974' . . . and the 'Plan of the United States District Court for the Southern District of Georgia for Achieving the Prompt Disposition of Criminal Cases'" S.D. Ga. L. Cr. R. 50.1. In addition, the local rules require the clerk's office to inform the judge on a monthly basis of any speedy trial deadlines in connection with pending cases. S.D. Ga. L. Cr. R. 50.2.

Here, Mitchell was indicted in July 2005. Due to errors in the clerk's office, Mitchell was not brought to trial within seventy days, and the court dismissed the indictment without prejudice in May 2007. Mitchell contends that his case exceeded the speedy-trial time limit by 411 days.

Although "[t]he length of the delay can sometimes be enough, by itself, to justify dismissal with prejudice," *United States v. Godoy*, 821 F.2d 1498, 1506 n.2 (11th Cir. 1987), where the delay was the result of administrative confusion, dismissal without prejudice may still be appropriate, *see, e.g.*, *United States v. Miranda*, 835 F.2d 830, 834 (11th Cir. 1988); *United States v. Williams*, 314 F.3d

12

552, 561 (11th Cir. 2002) (holding that 68-day delay was not enough to require dismissal with prejudice); *cf. United States v. Stayton*, 791 F.2d 17 (2d Cir. 1986) (concluding that 23-month delay was "dominating factor" in dismissing with prejudice) (*cited in Godoy*, 821 F.2d at 1506 n.2).

Here, the case proceeded quickly from the date of the indictment on July 14, 2005, through its second reassignment to a new judge on February 13, 2006. During this time, the court conducted a hearing on Mitchell's motion to suppress and entertained Mitchell's numerous motions. Much of the this time is excluded from the speedy trial period. *See* 18 U.S.C. § 3161(h)(1). It was only during the period from February 2006 to May 2007 that the case sat idle. Mitchell was serving his state sentence from April 2005 through November 2006. And, although we recognize that Mitchell spent a lengthy time in custody awaiting trial, we cannot conclude on this record that the district court should have dismissed the first indictment with prejudice. Our review of the other relevant factors confirms that the district court acted properly.

First, there is no question, and Mitchell concedes, that a felon-in-possession offense is a serious crime. Second, when we review the facts and circumstances leading to the violation, we focus on the culpability of the delay-producing conduct. *Williams*, 314 F.3d at 559 (quotation omitted). "A defendant has no duty

13

to bring himself to trial; the [Government] has that duty . . . ." *Barker*, 407 U.S. at 527. "Because the prosecutor and the court have an affirmative constitutional obligation to try the defendant in a timely manner . . . the burden is on the prosecution to explain the cause of the pre-trial delay." *Ingram*, 446 F.3d at 1337 (citation and internal quotation marks omitted). "Where the crime charged is serious, however, the court should dismiss only for a correspondingly severe delay." *United States v. Russo*, 741 F.2d 1264, 1267 (11th Cir. 1984).

Here, neither party was at fault for the delay. There is no dispute that the clerk's office failed to notify the court of the pending indictment and that the court failed to comply with the local rules, thereby enabling or exacerbating the administrative delay. The government also failed to adhere to the rules' notification requirements and bring the defendant to trial in a timely manner. *Cf. Miranda*, 835 F.2d at 834. Importantly, however, Mitchell also had an obligation to notify the court of the delay, *see id.*, and the record shows that he did not do so in this case. In fact, the court dismissed the first indictment *sua sponte*.

Third, considering the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice, dismissal with prejudice was not warranted. This factor not only allows courts to review the seriousness of the criminal charges and the reason for the delayed indictment but also "provides

14

authority for considering such aggravating and mitigating factors as the length of the delay and the prejudice to the defendant." *Williams*, 314 F.3d at 560 (citation omitted). Mitchell has not shown how the delay prejudiced his ability to prepare for trial; rather he argues that as a result of the delay Mangram had time to enter into a plea agreement and testify against him. Moreover, although Mitchell spent more than 400 days awaiting trial, much of that time was excluded from the speedy-trial period, and all but 6 months of it was spent in state custody. *See Knight*, 562 F.3d at 1323-24 (concluding that the defendant had not shown prejudice where he would have otherwise been serving a state sentence). Finally, because the court was responsible for the violations, there would be no deterrent effect if the dismissal was with prejudice.

In sum, a review of the facts and circumstances reflect that the district court did not abuse its discretion. Accordingly, we conclude there was no Speedy Trial Act violation warranting dismissal with prejudice.

B. Sixth Amendment

Mitchell also argues that the delay between his initial indictment in 2005 and his trial in 2008 violated his Sixth Amendment right to a speedy trial and the district court's local rules. He notes the extreme length of the delay and contends that he suffered prejudice as a result.

15

The government responds that there was no Sixth Amendment violation under *Barker*. The government explains that at the time the first federal indictment was filed, Mitchell was already in state custody. When his state term of imprisonment ended on November 17, 2006, Mitchell remained in custody on the federal indictment until he was released when the court dismissed the indictment. Mitchell was detained again after the second indictment. As a result, the government contends, Mitchell cannot meet *Barker*'s prejudice requirement.

Mitchell replies that he suffered prejudice resulting from his 411 days of incarceration and that the reason for the delay was beyond his control. He notes that he spent an additional 310 days in prison from the time he was rearrested on the second indictment until he was brought to trial.

"The Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the date of trial." *Knight*, 562 F.3d at 1323 (citing *United States v. Walters*, 591 F.2d 1195, 1200 (5th Cir. 1979)). The right, however, cannot be quantified into a specific number of days or months. *See Vermont v. Brillon*, 129 S.Ct. 1283, 1290 (2009). It must be evaluated under the particular circumstances of each case using a balancing test that weighs the conduct of both the government and the defendant. *See id.* In evaluating a possible Sixth Amendment violation, the district court considers four

16

factors: (1) "length of delay"; (2) "the reason for the delay"; (3) "the defendant's assertion of his right"; and (4) "prejudice to the defendant." *Id.* (quoting *Barker*, 407 U.S. at 530). The defendant must prove actual prejudice unless the first three factors all weigh heavily against the government. *Id.*; *see also Ingram*, 446 F.3d at 1336.

We first evaluate the length of the delay between the date of the indictment and the trial date; any delay beyond one year is "presumptively prejudicial" and triggers further analysis under the *Barker* test. *See Ingram*, 446 F.3d at, 1336, 1337 n.3. (quotation marks and citation omitted). Here, the length of time exceeded one year and thus was presumptively prejudicial. Accordingly, we consider the weight of the other factors.

The government bears the burden of explaining the reason for the delay. *See Ingram*, 446 F.3d at 1337. Deliberate delay "to hamper the defense" weighs heavily against the prosecution. *Brillon*, 129 S.Ct. at 1290 (citing *Barker*, 407 U.S. at 531). "[M]ore neutral reason[s] such as negligence or overcrowded courts" weigh less heavily "but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* Here, there was no deliberate action by the government, but the administrative issues and the government's failure to remind the court of

17

the pending case weigh against the government.

The third factor is the defendant's assertion of his right to a speedy trial. *Ingram*, 446 F.3d at 1336. If the defendant knew of the indictment years before his arrest but waited until he was arrested to invoke his right to a speedy trial, then this factor weighs heavily against him. *See Doggett*, 505 U.S. at 653. But if the defendant did not learn about the indictment until his arrest, and afterwards promptly asserted his speedy trial right, then this factor weighs heavily against the government. *See Ingram*, 446 F.3d at 1335, 1340. Here, Mitchell never asserted any right to a speedy trial until after the second indictment, when he filed his plea at bar seeking to have the first indictment dismissed with prejudice.[3] Mitchell's failure to assert his right more quickly weighs against his Sixth Amendment claim.

Because the three factors do not weigh heavily against the government, Mitchell must show actual prejudice resulting from the delay. *Knight*, 562 F.3d at 1323. In order to prove actual prejudice, Mitchell must demonstrate one of the following: (1) oppressive pretrial incarceration, (2) anxiety and concern, or (3) possible impairment of his defense. *See Barker*, 407 U.S. at 532. Mitchell must proffer more than "conclusory assertions of prejudice" or "unsubstantiated allegations of witnesses' faded memories." *United States v. Hayes*, 40 F.3d 362,

---

[3] Mitchell contends he repeatedly contacted the clerk's office, but he does not dispute that he never filed a motion seeking to dismiss the indictment.

366 (11th Cir. 1994). Mitchell contends that the delay caused him to remain in jail without bail and resulted in Mangram's decision to testify against him. Neither of these claims amounts to oppressive pretrial incarceration, anxiety, or impairment of his defense. As noted above, Mitchell spent a portion of this time in custody on state charges; thus he would have been incarcerated regardless of his federal indictment.

Because Mitchell cannot show actual prejudice, his Sixth Amendment claim fails.

C. Suppression

Before we reach the merits of Mitchell's suppression claim, we must first decide which arguments are properly before us. While Mitchell's appeal was pending, the Supreme Court issued its opinion in *Arizona v. Gant*, 129 S.Ct. 1710 (2009), in which the Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 129 S.Ct. at 1723. In his reply brief, Mitchell argued that the *Gant* decision confirmed that the search and seizure in his case was improper. The government asked us to strike the argument because Mitchell had not preserved the *Gant* argument before the district

19

court or in is opening brief. A single judge granted the government's motion to strike.

We are not bound by a single judge's order. *See* 11th Cir. R. 27-1(d). And upon review, we conclude that Mitchell properly raised the crux of the *Gant* argument both before the district court and in his opening brief. We therefore consider whether *Gant* entitles Mitchell to relief. We conclude that it does not.

This court recently addressed the impact of *Gant* in *United States v. Davis,–* F.3d – (11th Cir. 2010). In that case, police conducted a routine traffic stop, found the passenger to be intoxicated, and asked for his name. After the police determined that the passenger had not given his real name, they arrested him and placed him in a patrol car. The driver, who had failed a sobriety test, was also arrested and placed in a separate patrol car. During a subsequent search of the car, police found a firearm. *Davis*, manuscript op. at 2-3. At the time of the search, our case law permitted a vehicle search incident to arrest under such conditions. *See Davis*, manuscript op. at 4 (citing *United States v. Gonzalez*, 71 F.3d 819, 825 (11th Cir. 1996)).

After determining that *Gant* applied retroactively to cases pending on appeal, this court concluded that the search in *Davis* was unconstitutional; a search of the car was unlikely to produce evidence that Davis had given police a false

20

name, and both Davis and the driver had been removed from the car before the search and thus were not within reaching distance of the passenger compartment. We then considered the separate question whether *Gant* required suppression of the evidence. *Davis* manuscript op. at 7-8. We explained that prior precedent in this circuit permitted searches such as the one in *Davis*, and the Supreme Court's subsequent rejection of that interpretation of law did not prevent police from relying on our interpretation of the law at the time of the search. *Davis* manuscript op. at 4-5. We further noted that suppressing evidence when the police acted in good faith would serve no deterrent purpose. *Davis* manuscript op. at 12-13. Accordingly, we concluded that the evidence was admissible when obtained by officers acting "act[ing] in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Davis*, manuscript op. at 11 (*quoting United States v. Leon*, 468 U.S. 897, 919 (1984)).

Applying *Gant* and *Davis* to the case at bar, there is no question that the search violated *Gant*. *See Davis* manuscript op. at 6. Nohilly did not express any officer-safety concerns, and the search was unlikely to produce evidence of giving false information or underage drinking. Nevertheless, we need not require suppression of the evidence because Nohilly acted on the objectively reasonable belief that the search was constitutional under the law in effect at the time. *Davis*,

21

manuscript op. at 7-8. "[A] search performed in accordance with our erroneous interpretation of Fourth Amendment law is not culpable police conduct." *Davis*, manuscript op. at 12. Accordingly, because suppression of the evidence would serve no deterrent purpose, *Davis* draft manuscript op. at 12-13, the good-faith exception to the exclusionary rule applies, and the evidence against Mitchell was admissible.

D. Sentencing

Mitchell argues that attempted burglary was not a crime of violence, the court should not have increased his offense level based on the obliterated serial number where the jury made no factual findings, and he did not qualify as an armed career criminal because the court erroneously assigned points to two of his prior convictions. We find no merit in Mitchell's arguments.

Under the ACCA, a person who violates 18 U.S.C. § 922(g) and who has three previous convictions for a "violent felony" is an armed career criminal and subject to a mandatory minimum sentence of 15 years' imprisonment. 18 U.S.C. § 924(e)(1). This court's precedent holds that attempted burglary is a violent felony for purposes of the ACCA. *See United States v. James*, 430 F.3d 1150, 1157 (11th Cir. 2005). We are bound by decisions of prior panels until overruled by this court sitting *en banc* or by the Supreme Court. *United States v. Steele*, 147

22

F.3d 1316, 1317-18 (11th Cir. 1998).

Moreover, the government is not required to prove sentencing enhancements - such as an increase for obliterated serial numbers - to the jury, and the court may make factual findings relevant to enhancements. *See United States v. Rodriguez*, 398 F.3d 1291, 1300-01 (11th Cir. 2005).

Finally, Mitchell had sufficient criminal history points to qualify as a criminal history category VI even if the court had not included points for the convictions for battery and possession of a counterfeit substance. *See* U.S.S.G. Sentencing Table (listing 13 or more criminal history points as category VI). Thus, any error in the calculation of points or the qualification of Mitchell as an armed career criminal under § 4B1.4 was harmless.

IV.

For the foregoing reasons, we AFFIRM Mitchell's conviction and sentence.