FILED
United States Court of Appeals
Tenth Circuit

November 26, 2024

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TAYLOR NELSON PINDER,

    Defendant - Appellant.

No. 23-4154

_____

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:21-CR-00218-HCN-1)**
_____

Patricia Geary Glenn, Park City, Utah, for Defendant-Appellant.

Nathan H. Jack, Assistant United States Attorney (Trina A. Higgins, United States Attorney, with him on the brief), Salt Lake City, Utah, for Plaintiff-Appellee.
_____

Before **HARTZ**, **EBEL**, and **ROSSMAN**, Circuit Judges.
_____

**ROSSMAN**, Circuit Judge.
_____

A police officer pulled over appellant Taylor Pinder for speeding. Mr. Pinder identified himself by giving the officer someone else's driver's license. Mr. Pinder did not resemble the photo on the identification. The

officer ultimately arrested Mr. Pinder for the Utah misdemeanor offense of providing someone else's identifying information to a peace officer with intent to deceive the peace officer. The officer then searched the car incident to arrest and discovered contraband, including methamphetamine. Federal charges followed, and Mr. Pinder moved to suppress the evidence seized during the search of the car, arguing it violated the Fourth Amendment. The district court denied the motion. Mr. Pinder then agreed to plead guilty to one count of possession of methamphetamine with intent to distribute, *see* 21 U.S.C. § 841(a)(1), while reserving his right to appeal the suppression ruling. The district court sentenced Mr. Pinder to 120 months' imprisonment and five years' supervised release. This appeal timely followed.

Exercising jurisdiction under 28 U.S.C. § 1291, we agree with the district court that Mr. Pinder has failed to show a Fourth Amendment violation. We therefore affirm.

**I**

When a defendant appeals the denial of a motion to suppress, this court reviews the district court's factual findings for clear error and views the evidence in the light most favorable to the government, but we determine the reasonableness of the search de novo. *See United States v. Tueller*, 349 F.3d 1239, 1242 (10th Cir. 2003). In this appeal, there are no

factual or evidentiary disputes. The only question is whether the district court correctly decided the search was reasonable.

## II

## A

About midnight on April 30, 2021, Deputy Colton Brimhall of the Wasatch County (Utah) Sheriff's Office observed a speeding car and pulled it over. A man (later identified as Mr. Pinder) was driving the car, and a woman (later identified as Sierra Hatch, Mr. Pinder's girlfriend) was in the passenger seat.[1]

Deputy Brimhall approached the car and asked Mr. Pinder for his license. Mr. Pinder produced a license bearing the name "Luke Palmer." Aplt. App. vol. I at 72. In Deputy Brimhall's judgment, the picture on the license did not look like the person sitting in the driver's seat of the car he had just pulled over. The deputy therefore used the computer in his patrol vehicle to look up Luke Palmer's Social Security number. He then returned to the car and asked Mr. Pinder for the last four digits of that number. Mr. Pinder could not answer correctly.

---

[1] Mr. Pinder does not challenge the lawfulness of the traffic stop. Aplt. Opening Br. at 7. There is also no dispute the car belonged to Ms. Hatch's mother, and Mr. Pinder had permission to drive it.

3

Deputy Brimhall ordered Mr. Pinder out of the car, handcuffed him, walked him to the front of his police truck, told him he was being detained for using someone else's ID, and asked him to provide his real name. Before giving his real name, Mr. Pinder denied having his true ID on him and said, "I hope you don't take me to jail, sir, like, that's my friend's ID, like, I'm on probation." Ex. 2 at 07:40 to 07:46.[2] After some discussion about his probation status—he was on federal supervised release—Mr. Pinder volunteered, "The only reason my friend let me borrow that [license] is because, you know, like, usually, like, if I get hassled and you guys run my name, I get—it's not cool. Like, you guys, you automatically always go to jail, you know, and like, I never get treated right." Ex. 2 at 08:31 to 08:46.[3] Deputy Brimhall and Mr. Pinder further discussed Mr. Pinder's situation and Mr. Pinder then gave what turned out to be his real name and date of birth, as confirmed by Deputy Brimhall's computer.

By this point, Deputy Brimhall concluded Mr. Pinder had committed the class A misdemeanor of claiming to a police officer to be a different

---

[2] Exhibit 2 is the video from Deputy Brimhall's bodycam. The video does not show a timecode on the screen, such as a timecode embedded by the bodycam itself. We therefore cite to the elapsed time from 00:00, as shown in the video player.

[3] Mr. Pinder's claim about the license belonging to a friend turned out to be false, although Deputy Brimhall did not learn that until after the events recounted here.

person who actually exists. *See* Utah Code Ann. § 76-8-507(2)(b), (3)(b). Utah law gives police officers authority to arrest, without a warrant, any person whom the officer reasonably believes to have committed a class A misdemeanor. *See* Utah Code Ann. § 77-7-2(2). After confirming the county jail would take Mr. Pinder,[4] Deputy Brimhall formally arrested him. He then searched Mr. Pinder incident to arrest (including searching his wallet, which did not contain a driver's license) and sat him in the back of the patrol vehicle.[5]

Deputy Brimhall returned to the car Mr. Pinder had been driving. He informed Ms. Hatch that she would need to exit the vehicle while he performed a search. Ms. Hatch complied. Deputy Brimhall's search of the passenger compartment yielded, among other things, a handgun and methamphetamine. Deputy Brimhall then arrested Ms. Hatch, on whose person he found Mr. Pinder's real driver's license.

**B**

The government indicted Mr. Pinder on charges related to the methamphetamine and the handgun. Mr. Pinder moved to suppress the evidence gathered from the car.

---

[4] The jail was not automatically taking those accused of nonviolent misdemeanors, due to Covid protocols.

[5] Mr. Pinder does not challenge the lawfulness of his arrest.

After an evidentiary hearing and oral argument, the district court denied Mr. Pinder's motion. The district court concluded Deputy Brimhall appropriately searched the car under *Arizona* v. *Gant*, which authorizes vehicular searches incident to arrest "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle,'" 556 U.S. 332, 343 (2009) (quoting *Thornton* v. *United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)). In the district court's view, Mr. Pinder's real driver's license was relevant to the crime of arrest, and it was reasonable to believe the license would be found in the car, thus satisfying *Gant*. The district court further stated that searching the car "was likely [also] justified in light of Mr. Pinder's conditions of [supervised release]." Aplt. App. vol. II at 182 n.3. The court denied the suppression motion, leading to Mr. Pinder's conditional guilty plea and this appeal.

### III

Mr. Pinder claims Deputy Brimhall's search of the car was not a lawful search incident to arrest. Mr. Pinder emphasizes Deputy Brimhall already had verified his true identity by that time, so his real driver's license—an item the parties agree might sometimes be the legitimate object of a search—was no longer relevant and, therefore, could not justify the search.

6

We address this argument by beginning with an overview of the search-incident-to-arrest doctrine as applied to the vehicle an arrestee occupies just before the arrest. We then explain why, in light of the arguments presented, we find unavailing Mr. Pinder's claim that verifying an arrestee's true identity eliminates the justification for a search in these circumstances.

### A

In *New York* v. *Belton*, the Supreme Court held "that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile," 453 U.S. 454, 460 (1981) (footnote omitted). This court, along with most others, interpreted *Belton* to mean that such a search of an automobile is valid "without regard to the fact that the search occurred after [the defendant] had been restrained, and without regard to the nature of the offense for which he was arrested." *United States v. Humphrey*, 208 F.3d 1190, 1202 (10th Cir. 2000) (citation omitted).

In *Gant*, the Supreme Court held that a broad interpretation of *Belton* (like this court's interpretation in *Humphrey*) was incorrect. *See* 556 U.S. at 342–43. Rather, in the automobile context, there are only two permissible searches incident to the arrest of a recent occupant: (1) "when the arrestee

7

is unsecured and within reaching distance of the passenger compartment at the time of the search"; and (2) "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Id.* at 343 (internal quotation marks omitted).

This appeal concerns only the second type of search discussed in *Gant*—a search of the vehicle for evidence relevant to the crime of arrest. On that front, the Court explained

> In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. But in others, . . . the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein.

*Id.* at 343–44 (citations omitted).

**B**

The district court concluded a motorist's real driver's license would be evidence relevant to the offense of arrest—attempting to deceive a peace officer with someone else's identifying information. Mr. Pinder does not argue his real driver's license could *never* be relevant to this offense. He instead claims the Supreme Court has already decided a person's real license is irrelevant to this offense once the police have verified the motorist's true identity. As we explain, Mr. Pinder reads too much into the relevant Supreme Court opinion.

8

Mr. Pinder's argument relies on how *Gant* is discussed in *United States v. Davis*, 598 F.3d 1259 (11th Cir. 2010), and in the Supreme Court decision affirming it, *Davis v. United States*, 564 U.S. 229 (2011). In *Davis*, a police officer pulled over a car and encountered the defendant in the passenger seat. 598 F.3d at 1261. The defendant told the officer his name was Ernest Harris, but bystanders gave the officer the man's true name. *Id.* A records check supported the bystanders' claim, so the officer arrested the defendant "for giving a false name and placed him, handcuffed, in the back of his patrol car." *Id.* Soon after, the officer arrested the other occupant of the car (the driver), searched the car incident to arrest, and found a handgun in a jacket belonging to the defendant. *Id.*

A grand jury indicted the defendant on a gun charge. *Id.* At the time of that prosecution, the *Gant* case was pending before the Supreme Court, but the Eleventh Circuit's broad interpretation of *Belton* (similar to this circuit's) remained the governing law. Because of *Gant*'s potential outcome, the defendant moved to suppress the gun, arguing the Eleventh Circuit's interpretation of *Belton* was incorrect. *Id.* at 1261–62. The district court denied that motion and the defendant was convicted. *Id.* at 1262.

The defendant appealed. During that appeal, the Supreme Court decided *Gant* and abrogated the Eleventh Circuit's broad interpretation of *Belton*. *Id.* at 1262. The Eleventh Circuit summarized the state of the case:

> Davis now relies on *Gant* to argue that the search after his arrest violated the Fourth Amendment and, therefore, that the gun recovered from his jacket should have been suppressed. The government responds that we should not retroactively apply the exclusionary rule to searches conducted in good-faith reliance on our precedent.

*Id.* at 1262. The question before the Eleventh Circuit was whether to uphold the search because, when conducted, it was lawful under that court's precedent.

Before answering that question, however, the Eleventh Circuit addressed an argument apparently no party had made, namely, whether the search could satisfy *Gant*'s relevant-to-the-crime-of-arrest exception. On that issue, the court opined,

> There can be no serious dispute that the search here violated Davis's Fourth Amendment rights as defined in *Gant*. . . . Davis was arrested for 'an offense for which police could not expect to find evidence in the passenger compartment,' because [the arresting officer] had already verified Davis's identity when he arrested him for giving a false name.

*Id.* at 1263 (quoting *Gant*, 556 U.S. at 344) (citation omitted). The Eleventh Circuit then went on to endorse the government's argument that *Gant* should not invalidate searches conducted in good-faith reliance on pre-*Gant* circuit precedent. *Id.* at 1264. The court thus upheld the defendant's conviction.

The defendant petitioned for certiorari on a single question: "Whether the good-faith exception to the exclusionary rule applies to a search

10

authorized by precedent at the time of the search that is subsequently ruled unconstitutional." Pet'n for Writ of Certiorari, *Davis*, 564 U.S. 229 (No. 09-11328), 2010 WL 2937720, at \*i (internal quotation marks omitted). The Supreme Court granted certiorari without modifying the question presented, *see Davis v. United States*, 562 U.S. 1002 (2010), and the Court ultimately upheld the Eleventh Circuit's application of the good-faith exception, *see Davis*, 564 U.S. at 232.

As part of its analysis of the good-faith question, the Supreme Court included a comment that forms the linchpin of Mr. Pinder's argument: "Although the search turned out to be unconstitutional under *Gant*, all agree that the officers' conduct was in strict compliance with then-binding Circuit law and was not culpable in any way." *Davis*, 564 U.S. at 239–40. Mr. Pinder says the first half of this sentence amounts to a holding that: (a) the search was indeed unconstitutional; and (b) it was unconstitutional for the reasons explained by the Eleventh Circuit, i.e., the arresting officer "had already verified Davis's identity when he arrested him for giving a false name," *Davis,* 598 F.3d at 1263.

We are not persuaded. In light of how the case was presented to the Supreme Court, we understand its statement, "the search turned out to be unconstitutional under *Gant*," *Davis*, 564 U.S. at 239, as merely descriptive of the procedural history, not as a holding, or even dictum. Thus, *Davis* did

11

not settle—or even attempt to address—whether a person's real ID is relevant to the crime of giving a false ID to a police officer after the police officer has verified the person's identity.

## C

Although the Supreme Court's *Davis* decision did not endorse the Eleventh Circuit's conclusion that the search had been unconstitutional, the Eleventh Circuit may still be correct on the merits. In other words, it may still be true that a person's real ID is no longer relevant to the crime of giving a false ID to a police officer after the police have verified the person's true identity through other means. Mr. Pinder argues to this effect as well.

We disagree. Starting from the uncontested premise that Mr. Pinder's real driver's license was relevant to the crime of arrest *before* Deputy Brimhall verified Mr. Pinder's identity, we do not see how that verification transformed the real driver's license from relevant to irrelevant. Perhaps the real driver's license then became cumulative evidence but calling it "cumulative" presupposes relevance. *See* Fed. R. Evid. 403 (establishing "[t]he court may exclude relevant evidence if," among other reasons, it is "needlessly . . . cumulative"); Utah R. Evid. 403 (same).[6] Thus, Mr. Pinder's

---

[6] *Gant* did not explain whether "relevant to the crime of arrest," 556 U.S. at 343 (internal quotation marks omitted), refers to relevance as typically defined in federal and state rules of evidence, or something else. The parties' arguments presuppose relevance in the rules-of-evidence

real driver's license remained relevant even though Deputy Brimhall verified Mr. Pinder's identity before searching the car.[7]

## D

Finally, Mr. Pinder asserts we should not take *Gant* at face value when it says "the offense of arrest [may] supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein," 556 U.S. at 344. He urges us instead to adopt the Colorado Supreme Court's interpretation of *Gant* in *People v. Chamberlain*, 229 P.3d 1054 (Colo. 2010). There, the court characterized a search justified solely by the offense of arrest as one with no more than a "mere possibility," *id.* at 1057, that evidence "might conceivably be found in the arrestee's vehicle,"

---

sense. We accept the parties' interpretation of *Gant* for purposes of this disposition.

[7] In the same context, Mr. Pinder argues "there was no reason to believe his license would be found in the vehicle." Aplt. Opening Br. at 24. Later in his brief, he asserts he "gave officers a driver's license belonging to another person which makes it less [rather than more] likely to believe his own driver's license would be found in the vehicle." Aplt. Opening Br. at 29 (brackets in original). Mr. Pinder does not elaborate on these assertions. *See Eizember v. Trammell*, 803 F.3d 1129, 1141 (10th Cir. 2015) (stating that "stray sentences like these are insufficient to present an argument").

In any event, on this record, we are not persuaded it was unreasonable to suspect Mr. Pinder's real license would be found in the car. Mr. Pinder told Deputy Brimhall he was carrying Luke Palmer's license specifically in the event he needed to produce an ID to a police officer. This reasonably suggests Mr. Pinder possessed a license of his own that he used for other purposes.

13

*Id.* at 1056. *Gant* could not have meant to authorize such searches because, in the court's view, it would resurrect the broad reading of *Belton* that *Gant* disapproved. *Id.* at 1056–57. Thus, the court held there must be "[s]ome reasonable expectation beyond a mere possibility, whether arising solely from the nature of the crime or from the particular circumstances surrounding the arrest." *Id.* at 1057.

Mr. Pinder does not tell us where he raised this argument in the district court. *Cf.* 10th Cir. R. 28.1(A) ("For each issue raised on appeal, all briefs must cite the precise references in the record where the issue was raised and ruled on."). Although we have no duty to search the record ourselves, *see United States v. Griffith*, 928 F.3d 855, 871 (10th Cir. 2019), we have reviewed the parties' district-court briefing regarding the motion to suppress. We have also reviewed the transcripts of the evidentiary hearing and oral argument. We cannot find where Mr. Pinder asserted anything like *Chamberlain*'s interpretation of *Gant*. He accordingly forfeited the issue in the district court. *See United States v. Salti*, 59 F.4th 1050, 1059 (10th Cir. 2023) (holding an argument had been "forfeited by Defendant because it was not raised in district court"), *cert. denied*, 144 S. Ct. 153 (2023). He also does not argue for plain-error review on appeal. We therefore deem the issue waived, and we do not reach it. *See United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019) ("When an appellant fails to

preserve an issue and also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived . . . and decline to review the issue at all—for plain error or otherwise.").

## IV

The district court did not err in its Fourth Amendment analysis.[8] We therefore **AFFIRM** the district court's denial of Mr. Pinder's suppression motion.[9]

---

[8] Given this disposition, we do not reach the district court's alternative conclusion based on Mr. Pinder's supervised-release status. We also do not reach the government's argument, asserted for the first time on appeal, that Deputy Brimhall's search should be upheld because he was acting in good faith.

[9] We grant Mr. Pinder's motion to supplement the record.