[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 25, 2009
THOMAS K. KAHN
CLERK

_____

Nos. 08-10050 & 08-10054

_____

D. C. Docket Nos. 05-00454-CR-JTC-1,
06-00443-CR-JTC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT KNIGHT,
a.k.a. Robert E. Knight,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(March 25, 2009)

Before BARKETT, PRYOR and FARRIS,[*] Circuit Judges.

_____

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

PRYOR, Circuit Judge:

The main issue in this appeal is whether a violation of the speedy trial clause of the Interstate Agreement on Detainers Act, 18 U.S.C. App. 2 § 2, Art. IV(c), can be harmless when the United States is the receiving state. We conclude that it can be. Robert Knight appeals his conviction and sentence for being a felon in possession of a firearm, 18 U.S.C. § 922(g). Knight challenges the denial of his motion to suppress, the sufficiency of the evidence against him, and the denial of his motions to dismiss his indictment with prejudice for violations of the right to a speedy trial under the Sixth Amendment, the Speedy Trial Act, and the Detainers Act, and the right to due process under the Fifth Amendment. We conclude that the district court did not err when it denied Knight's motion to suppress; the evidence against Knight was sufficient; the violation of the speedy trial clause of the Detainers Act was harmless; and the district court did not err when it denied on other grounds Knight's motions to dismiss his indictment with prejudice. We also conclude, as the United States concedes, that the district court erred when it failed to credit Knight for time that he served in state custody. We affirm Knight's conviction, vacate his sentence, and remand for further proceedings.

## I. BACKGROUND

Our discussion of the background of this prosecution is divided in five parts.

First, we discuss the facts leading to Knight's arrest and indictment in state and federal court. Second, we discuss the facts related to Knight's transfer to federal custody. Third, we discuss the pretrial proceedings that resulted in the dismissal without prejudice of Knight's first indictment. Fourth, we discuss Knight's second federal indictment and the pretrial proceedings related to that indictment. Fifth, we discuss Knight's conviction and sentence.

*A. Facts Leading to Knight's Arrest and Indictment in State and Federal Court*

On May 15, 2004, officers Craig Schmidt and L.W. Wagaman were performing traffic duties at a public gathering at a park in Atlanta. The officers stopped three men in a blue Chevrolet Impala after they heard loud music emanating from the car and saw that the driver was not wearing a seatbelt. As the officers approached the car, they could smell a strong odor of marijuana. Wagaman also noticed a red cup in the car that appeared to contain an alcoholic beverage. After the driver argued with Wagaman about the traffic stop and having to produce identification, Wagaman asked the driver to exit the car, patted him down, and discovered a firearm on him. Wagaman then handcuffed the driver and escorted him to the police car.

While Wagaman was interacting with the driver, Schmidt noticed that Knight, who was seated behind the driver's seat, appeared nervous. Schmidt saw

3

Knight reach into his front pocket, pull out a firearm, and place it on the floorboard. Schmidt drew his firearm and, assisted by Wagaman who had also drawn his firearm, ordered Knight and the other occupant, seated in the front passenger seat of the car, to show their hands. Schmidt removed Knight from the car, put him on the ground, handcuffed him, and patted him down. Knight had on his person ammunition that matched the .22 caliber firearm on the floorboard, marijuana, and money. The officers discovered that the firearm was a .22 caliber Jennings semiautomatic pistol and had a fully loaded clip and a chambered round. Schmidt and Wagaman performed an inventory search of the car and smelled alcohol in the red cup.

When Wagaman was transferring Knight from the police car to the Dekalb County Jail, Wagaman replaced Knight's metal handcuffs with flex cuffs. Knight wrenched away from Wagaman, dislocated Wagaman's shoulder, and ran to a nearby fence. Other officers restrained Knight and took him to the Dekalb County Jail. Two days later, Knight escaped during his transfer for a court appearance. Knight was rearrested in 2005.

Knight was indicted, separately, in Dekalb County for multiple charges related to the traffic stop and for his later escape from custody. On September 29, 2005, a federal grand jury indicted Knight for possession of a firearm by a

4

convicted felon. Knight later pleaded guilty in state court to the charges of escape and obstruction of justice and was sentenced to ten years of imprisonment. In deference to the federal indictment, the state court deferred prosecution of the indictment related to the traffic stop.

*B. Knight's Transfer to Federal Custody*

Federal authorities lodged a detainer against Knight that required state authorities to hold him even if he posted bond for his state charges. Marcos Bess and Benjamin Gibbons, special agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, interviewed Knight while he was in state custody. Agent Bess testified that he was aware that he was investigating Knight in connection with the same traffic stop for which Knight was being held in state custody.

Bess informed Knight of his rights and asked whether Knight had an attorney. Knight said that he had an attorney for the state charges but did not think he would use the same attorney to defend him in the federal case. Bess did not contact Knight's attorney before he interviewed Knight. The interview between Bess and Knight lasted between 45 minutes and an hour.

Knight admitted that he had given his girlfriend money to purchase firearms on his behalf and stated that he bought the guns for self-protection. Knight did not

ask for an attorney or ask to end the interview, and Bess did not promise Knight anything in return for his testimony except that he would tell the prosecutor that Knight confessed.

On December 9, 2005, a magistrate judge issued a writ of habeas corpus ad prosequendum that required Georgia authorities to deliver Knight to federal custody. On December 16, 2005, Knight was transferred to federal custody and pleaded not guilty at his arraignment.

*C. Pretrial Proceedings Leading to Dismissal of Knight's First Federal Indictment*

On January 3 and 4, 2006, Knight moved to suppress his statements and physical evidence. A suppression hearing was held on February 15, 2006, and Knight ultimately withdrew those motions on March 30, 2006.

On February 24, 2006, Knight moved pro se to dismiss his indictment for a violation of the 30-days-to-indict clause of the Speedy Trial Act, 18 U.S.C. § 3161(b). The magistrate judge recommended the denial of Knight's motion because Knight had been indicted before his transfer to federal custody. The district court adopted the report and recommendation and denied Knight's motion.

On August 22, 2006, Knight moved to dismiss the indictment based on pretrial delay in violation of the Sixth Amendment, the Speedy Trial Act, 18 U.S.C. §§ 3161, 3162, and Federal Rule of Criminal Procedure 48(b). The United

6

States responded that much of the period after Knight's indictment had been spent attempting to achieve Knight's cooperation and, in support of that argument, provided the court with a timeline to which Knight did not object. The district court dismissed the indictment without prejudice on the ground that the delay violated the Speedy Trial Act. Knight filed a motion for reconsideration. The district court ruled that the 11-month delay was not presumptively prejudicial under the Sixth Amendment and denied the motion for reconsideration. Knight appealed to this Court, but we dismissed the appeal for lack of jurisdiction because the dismissal without prejudice was not a final order.

*D. Pretrial Proceedings Related to Knight's Second Federal Indictment*

On October 25, 2006, a grand jury returned a second indictment against Knight for possession of a firearm by a convicted felon. Knight again moved to suppress his statements and physical evidence. On January 8, 2007, Knight moved to dismiss for pretrial delay on the ground that his first indictment should have been dismissed with prejudice. On March 6, 2007, Knight moved to dismiss for a violation of due process on the ground that he had been wrongly detained in federal custody between his two federal indictments in violation of the anti-shuttling provision of the Detainers Act, 18 U.S.C. App. 2 § 2, Art. IV(e).

On May 10, 2007, the magistrate judge recommended that the district court

deny Knight's motions to suppress evidence and statements, his motion to dismiss for pretrial delay, and his motion to dismiss for a violation of due process. On May 21, 2007, Knight moved pro se to dismiss on the grounds that his rights to a speedy trial under the Sixth Amendment and due process under the Fifth Amendment had been violated. On May 25, 2007, Knight objected to the report and recommendation. The district court denied Knight's motions to dismiss his second indictment and his motions to suppress statements and evidence. On June 6, 2007, Knight moved pro se to dismiss for a violation of the speedy trial clause of the Detainers Act, 18 U.S.C. App. 2 § 2, Art. IV(c), and the district court denied the motion and concluded that the government had 120 days from Knight's second indictment to try Knight.

### E. Knight's Conviction and Sentence

After Knight stipulated that he had knowingly possessed a firearm that was manufactured in California and that he had previously been convicted of a felony, the district court found Knight guilty at a bench trial on August 20, 2007. The district court sentenced Knight to the statutory maximum term of 120 months of imprisonment, followed by three years of supervised release. Knight objected to the denial of his request for a reduction of his sentence for acceptance of responsibility, the calculation of his criminal history, and the denial of credit for

his time served in state custody.

## II. STANDARDS OF REVIEW

Several standards of review govern this appeal. We review for an abuse of discretion whether a district court should dismiss an indictment with or without prejudice for a violation of the Speedy Trial Act. United States v. Brown, 183 F.3d 1306, 1309 (11th Cir. 1999). We review de novo the denial of a motion to dismiss for a violation of the right to a speedy trial under the Sixth Amendment. United States v. Harris, 376 F.3d 1282, 1286 (11th Cir. 2004). We review de novo the application of the Interstate Agreement on Detainers Act. See United States v. Collins, 90 F.3d 1420, 1426 (9th Cir. 1996). The denial by the district court of a motion to suppress is a mixed question of law and fact. We review findings of fact for clear error, and we review de novo the application of law to those facts. United States v. Alexander, 835 F.2d 1406, 1408 (11th Cir. 1988). We review the sufficiency of the evidence de novo and view the evidence in the light most favorable to the government. United States v. Keller, 916 F.2d 628, 632 (11th Cir. 1990). We review the application of the Sentencing Guidelines for clear error as to factual findings and de novo as to questions of law. United States v. Crawford, 407 F.3d 1174, 1177–78 (11th Cir. 2005). We review a denial of a reduction of sentence for an acceptance of responsibility for clear error, and that finding "'is

entitled to great deference on review and should not be disturbed unless it is without foundation.'" United States v. Davis, 878 F.2d 1299, 1301 (11th Cir. 1989) (per curiam) (quoting United States v. Spraggins, 868 F.2d 1541, 1543 (11th Cir. 1989)).

## III.  DISCUSSION

We divide our discussion of Knight's arguments in six parts.  First, we address Knight's argument that the district court erred when it dismissed his first indictment without prejudice for a violation of the Speedy Trial Act.  Second, we address Knight's argument that the district court erred when it denied his motions to dismiss for a violation of his Sixth Amendment right to a speedy trial.  Third, we address Knight's argument that the district court erred when it denied his motion to dismiss for a violation of due process.  Fourth, we address Knight's argument that the district court erred when it denied his motion to dismiss for a violation of the speedy trial clause of the Detainers Act.  Fifth, we address Knight's remaining arguments about his conviction: that the district court erred when it denied his motions to suppress his statements and the evidence seized at his arrest and that the evidence against him was insufficient to sustain his conviction.  Sixth, we address Knight's arguments about his sentence.

*A.  The District Court Did Not Abuse Its Discretion When It Dismissed Knight's First Indictment Without Prejudice for a Violation of the Speedy Trial Act.*

10

A district court has the discretion to dismiss an indictment with or without prejudice under the Speedy Trial Act and must consider three factors when determining the method of relief: (1) "the seriousness of the offense"; (2) "the facts and circumstances of the case which led to the dismissal"; and (3) "the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). "[T]he proper dismissal sanction to be imposed in each case is a matter left to the exercise of the sound discretion of the trial judge after consideration of the factors enumerated in the statute," United States v. Russo, 741 F.2d 1264, 1267 (11th Cir. 1984), and the judgment of the district court "should not lightly be disturbed" if the district court has considered all of the statutory factors and if the underlying factual findings are not clearly erroneous. United States v. Taylor, 487 U.S. 326, 337, 108 S. Ct. 2413, 2420 (1988). The district court dismissed Knight's first indictment without prejudice under the Speedy Trial Act, 18 U.S.C. § 3161(c), because more than 70 days had passed since Knight first appeared before the court.

The district court did not abuse its discretion when it weighed the three factors and dismissed Knight's indictment without prejudice. The district court correctly determined that the statutory minimum sentence of ten years of imprisonment reflects the seriousness of Knight's offense. The district court

11

considered "the culpability of the delay-producing conduct" and did not clearly err when it found that the delay was not attributable to either party. The United States had submitted a detailed timeline of events, which Knight did not challenge, that established that the majority of the delay was attributable to Knight's indecision about whether to cooperate with the United States and a short portion of the delay was attributable to the efforts of the federal prosecutors to determine whether Knight qualified as an armed career criminal. As to the third factor, the district court correctly determined that Knight had not alleged that he had been prejudiced by the delay and found that dismissing with prejudice would encourage gamesmanship by defendants.

Knight argues that his custody in a maximum-security facility, where he allegedly suffered depression and abuses by inmates is a "unique circumstance[]," United States v. Godoy, 821 F.2d 1498, 1506 (11th Cir. 1987), that required the dismissal of his indictment with prejudice, but we disagree. Had Knight not been in federal custody awaiting trial, he would have returned to state imprisonment. Knight also was held in a maximum-security facility because of his earlier escape.

B. *The District Court Did Not Err When It Denied Knight's Motions To Dismiss for a Violation of His Sixth Amendment Right to a Speedy Trial.*

To determine whether the government has violated the right to a speedy trial under the Sixth Amendment, a district court considers four factors: (1) "length of

12

delay"; (2) "the reason for the delay"; (3) "the defendant's assertion of his right"; and (4) "prejudice to the defendant." Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972). We have held that, unless the period of delay is "presumptively prejudicial" under the first factor, a district court need not consider the other factors. United States v. Register, 182 F.3d 820, 827 (11th Cir. 1999). A delay becomes "presumptively prejudicial" as it approaches one year. United States v. Schlei, 122 F.3d 944, 987 (11th Cir. 1997). "The Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the date of trial." United States v. Walters, 591 F.2d 1195, 1200 (5th Cir. 1979). Almost two years elapsed between Knight's first indictment and his trial.

Two of the first three factors under Barker weigh in favor of Knight's argument that his constitutional right to a speedy trial was violated. The delay of almost two years was presumptively prejudicial, but the reasons for the delay were attributable to the early attempts by the United States to achieve Knight's cooperation, the resolution of Knight's numerous pretrial motions, and the process of obtaining a second indictment against Knight. Knight asserted his right to a speedy trial promptly on February 24, 2006.

Although two of the first three factors weigh in his favor, Knight cannot

13

establish that he was actually prejudiced by the delay. See Schlei, 122 F.3d at 988. Three interests must be considered in evaluating actual prejudice: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. Id. at 988. The third factor is most important "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id. Although Knight again complains about the conditions of his detention in a maximum-security facility, he would have been otherwise serving a state sentence of imprisonment and was housed in the maximum-security facility because of his earlier escape. "[M]ost importantly, [Knight] has not shown–and could not show–that the delay prejudiced his defense at all because he had no defense, as he had stipulated to each element of the § 922(g) offense." United States v. Dunn, 345 F.3d 1285, 1297 (11th Cir. 2003).

Because Knight did not establish a violation of the Sixth Amendment, it also was not an abuse of discretion for the district court to deny his motion to dismiss his indictment under Federal Rule of Criminal Procedure 48(b). That rule "'vests much discretion in the trial court, and dismissal is mandatory only if the defendant's constitutional rights have been violated.'" Id. (quoting United States v. Butler, 792 F.2d 1528, 1533 (11th Cir. 1986)). When a defendant fails to

14

establish that his Sixth Amendment right to a speedy trial was violated, "there is no basis for concluding that the district court abused its discretion in refusing to grant appellant's motion insofar as it relied on [Rule 48(b)]." Id.

*C. The District Court Did Not Err When It Denied Knight's Motion To Dismiss for a Violation of Due Process.*

Knight argues that because the United States did not return him to state custody after his first indictment had been dismissed, the United States violated the Detainers Act, 18 U.S.C. App. 2 § 2, Art. IV(e), and denied him due process. Knight argues that had he been returned to state custody, he would have been entitled to a dismissal of his indictment with prejudice. Knight argues that the United States deliberately kept him in federal custody to gain a tactical advantage. For these reasons, Knight argues that the district court erred when it denied his motion to dismiss his indictment with prejudice. This argument fails.

The first problem with Knight's argument is that the district court clearly had the discretion, under the Detainers Act, to dismiss Knight's indictment without prejudice. The district court already had exercised its discretion to dismiss Knight's indictment without prejudice, which allowed the United States to obtain a second indictment against Knight. Ordinarily, "[i]f trial is not had on any [indictment] contemplated hereby prior to the prisoner's being returned to the original place of imprisonment . . . such indictment . . . shall not be of any further

15

force or effect, and the court shall enter an order dismissing the same with prejudice," 18 U.S.C. App. 2 § 2, Art. IV(e), but there is an exception to this rule when the United States is the receiving state. A federal district court has the discretion to dismiss the indictment without prejudice:

> Notwithstanding any provision of the agreement on detainers to the contrary, in a case in which the United States is a receiving State–any order of a court dismissing any [indictment] may be with or without prejudice. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice.

Id. § 9(1). The district court had the discretion to dismiss Knight's indictment without prejudice under this provision for the same reasons the district court already had reached that decision under the Speedy Trial Act.

Knight cannot establish that his retention in federal custody violated his right to due process. Knight argues that the violation of his right to due process by remaining in federal custody is somehow analogous to a violation based on pre-indictment delay, but this analogy is inapt. "To prove a due process violation resulting from a pre-indictment delay, [a defendant] must show: (1) actual prejudice to [his] defense from the delay; and (2) that the delay resulted from a deliberate design by the government to gain a tactical advantage." United States v.

16

Thomas, 62 F.3d 1332, 1339 (11th Cir. 1995). Knight cannot establish actual prejudice to his defense because he stipulated to all the elements of his offense. Knight also fails to explain how his remaining in federal custody amounted to a deliberate decision by the United States to gain a tactical advantage. Knight was still subject to a second indictment and another transfer to federal custody even if he had been returned first to state custody. The retention of Knight in federal custody caused him less, not more, pretrial delay. The district court did not err when it denied Knight's motion.

*D. Any Error Based on a Violation of the Speedy Trial Clause of the Detainers Act Was Harmless.*

Knight argues that his indictment should have been dismissed with prejudice based on a violation of the speedy trial clause of the Detainers Act. That provision states that "trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." 18 U.S.C. App. 2 § 2, Art. IV(c). The ordinary remedy for a violation of the speedy trial provision is a dismissal with prejudice:

> [I]n the event that an action on the indictment . . . is not brought to trial within the period provided in . . . article IV hereof, the appropriate court of the jurisdiction where the indictment . . . has been

17

> pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

Id. § 2, Art. V(c). But this ordinary rule again has the same exception when the United States is the receiving state: "Notwithstanding any provision . . . to the contrary," dismissal may be without prejudice. Id. § 9(1). The district court reasoned that, because courts often construe the Speedy Trial Act and Detainers Act to be consistent, the 120-day period under the Detainers Act was reset upon Knight's second indictment.

The United States argues that the Detainers Act is not applicable because a detainer never was filed against Knight and because he was not "serving a term of imprisonment" when awaiting trial, but we disagree. The Detainers Act applies "when [the United States] activates its provisions by filing a detainer against a state prisoner and then obtains his custody by means of a writ of habeas corpus ad prosequendum." United States v. Mauro, 436 U.S. 340, 349, 98 S. Ct. 1834, 1842 (1978). The record establishes that a detainer was lodged against Knight before his first indictment. Agent Bess testified at a pretrial conference that a detainer had been lodged against Knight while he was in state custody. Because the dismissal of Knight's first indictment without prejudice did not produce a final resolution of the charges against him, the original detainer against Knight remained in effect: "The detainer remains lodged against the prisoner until the underlying charges are

18

finally resolved." Id. at 362, 98 S. Ct. at 1848. The Detainers Act also applies to a prisoner "serving a term of imprisonment in any party State." 18 U.S.C. App. 2 §2, Art. IV(a). Knight had been convicted and sentenced in a state court and was in state custody serving time toward his sentence. The Act governed his transfer to federal custody even though Knight had not yet been assigned or transferred to the state prison where he was expected to serve the duration of his sentence.

We agree with Knight that the United States technically violated the speedy trial clause of the Detainers Act. Knight was not returned to state custody after his first indictment was dismissed and remained in the receiving state more than 120 days after his arrival. Although Knight was in federal custody for only 28 days between the two federal indictments, the failure of the United States to return Knight to state custody, lodge a new detainer, and obtain a writ of habeas corpus ad prosequendum kept the 120-day period from resetting so that Knight was in federal custody for more than 120 days after his initial arrival. We disagree with the reasoning of the district court that the second indictment of Knight reset the period for measuring the 120 days.

Although the United States violated the speedy trial clause of the Detainers Act, the denial of Knight's motion to dismiss was harmless for two reasons. First, the speedy trial clause allows a district court to grant a continuance for good cause,

19

and the obtaining of a second indictment clearly would have been considered good cause by the district court. The United States, after all, was put to the burden of obtaining a second indictment because the district court had granted partial relief on Knight's motion. Second, because the United States was the receiving state, the district court also would have had the discretion to dismiss the second indictment without prejudice as the district court had done with respect to Knight's first indictment. The United States then would have been free to return Knight to state custody and obtain a third indictment against him, which would have delayed his proceeding without violating the Detainers Act.

Knight argues that the Supreme Court has held that the mandatory language of the Detainers Act does not allow for a harmless, technical, or de minimis error exception, Alabama v. Bozeman, 533 U.S. 146, 153–54, 121 S. Ct. 2079, 2084–85 (2001), but that decision does not apply to this appeal. In Bozeman, Alabama was the receiving jurisdiction and violated the anti-shuttling provision of the Detainers Act, 18 U.S.C. App. 2 § 2, Art. IV(e), when it transported a prisoner from federal to state custody for a single day to be arraigned and then returned the prisoner to the sending state before trial. 533 U.S. at 151–52, 121 S. Ct. at 2083–84. The Court held that the language of the anti-shuttling provision was mandatory as to both the prohibited conduct and the remedy:

20

> [T]he language of the Agreement militates against an implicit exception, for it is absolute. It says that when a prisoner is "returned" before trial, the indictment, information, or complaint "shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

Id. at 153, 121 S. Ct. at 2084–85 (quoting 18 U.S.C. App. 2 § 2, Art. IV(e)) (emphasis omitted). The difference in Knight's case is that, when the United States is the receiving state, a dismissal with prejudice is not mandatory, as it was in Bozeman. Congress made explicit that the United States is treated differently under the Detainers Act because, "[n]otwithstanding any provision . . . to the contrary," when the United States is the receiving jurisdiction, a dismissal may be without prejudice. 18 U.S.C. App. 2 § 9(1).

The stated purpose of the Detainers Act is "to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." Id. § 2, Art. I. That purpose was not violated when the district court did not dismiss Knight's second indictment based on a violation of the speedy trial clause of the Act. Any error was harmless.

*E. The District Court Did Not Err When It Denied Knight's Motions To Suppress Evidence and Statements and When It Determined the Evidence Was Sufficient To Convict Knight.*

Knight's remaining arguments about his conviction are without merit.

21

Knight challenges the denial of his motion to suppress the evidence seized at his arrest, the denial of his motion to suppress statements he made to Agent Bess, and the sufficiency of the evidence. We address each issue in turn.

Knight argues that there was no reasonable suspicion to pat down the driver of the vehicle and that this illegal search tainted the remainder of the encounter, including the discovery of his gun and other evidence, but this argument fails. There was probable cause to stop the car because Schmidt saw that the driver was not wearing a seat belt. See United States v. Chanthasouxat, 342 F.3d 1271, 1274 (11th Cir. 2003). Because there was probable cause to stop the car, Wagaman was entitled to ask the driver to step out of the car. Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6, 98 S. Ct. 330, 333 n.6 (1977). The other circumstances, taken in their totality, gave Wagaman a reasonable suspicion to pat down the driver for Wagaman's safety: Wagaman smelled marijuana and alcohol, and the driver argued with him at the initiation of the stop. See Terry v. Ohio, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884 (1968). Because the officers had reasonable suspicion to pat down the driver, the district court did not err when it denied Knight's motion to suppress evidence the officers had seized.

Knight also argues that his statements to federal agent Bess should have been suppressed because he did not waive his right to remain silent and his right to

counsel, but we disagree. Knight waived his right to remain silent, and his waiver was voluntary, knowing, and intelligent. Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966). Bess testified that he informed Knight of his Miranda rights and explained that the rights meant Knight could refuse to speak or discontinue the interview, and Knight responded that he understood his rights and wished to speak with Bess.

Knight's prior invocation of his right to counsel on the state charges did not apply to the federal charges against him. The Sixth Amendment right to counsel is offense-specific: "It cannot be invoked once for all future prosecutions, [because] it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial proceedings–whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S. Ct. 2204, 2207 (1991) (internal quotation marks omitted). The dual sovereignty doctrine applies to the right to counsel such that an invocation of the right to counsel for a state charge does not invoke the right for an identical federal charge. United States v. Burgest, 519 F.3d 1307, 1310–11 (11th Cir. 2008), cert. denied, 129 S. Ct. 274 (2008). Knight did not invoke his right to counsel for the federal charges against him, and there is no evidence that Knight had obtained counsel to represent him on the federal charges. The district court did

not err when it denied Knight's motion to the suppress statements he made to Bess.

Knight also argues that the evidence was insufficient to convict him of being a felon in possession of a firearm, but Knight's argument is foreclosed by precedent and his stipulation at trial. To be convicted of possession of a firearm by a convicted felon, the firearm must have affected interstate commerce, and a "minimal nexus" to interstate commerce is sufficient. United States v. Dupree, 258 F.3d 1258, 1260 (11th Cir. 2001); United States v. McAllister, 77 F.3d 387, 389 (11th Cir. 1996). In Dupree, the requirement of a minimal nexus was satisfied because the defendant "brandish[ed] a firearm that was manufactured in California and found in his car [in Georgia]." 258 F.3d at 1260. Knight stipulated that the firearm found in the car was manufactured in California and crossed state lines before he possessed the weapon in Georgia. This stipulation is sufficient to support his conviction. See id.

*F. The Only Sentencing Error Was the Failure To Credit the Time Knight Had Spent in State Custody.*

Knight raises three arguments about his sentence: that the district court erred (1) when it failed to reduce his sentence for acceptance of responsibility, (2) when it calculated his criminal history category, and (3) when it calculated his sentence. We discuss each argument in turn.

1. The District Court Did Not Clearly Err When It Denied Knight's Request To

Reduce His Sentence Based on Acceptance of Responsibility.

Section 3E1.1(a) of the Sentencing Guidelines provides for a two-level reduction if the defendant "clearly demonstrates acceptance of responsibility for his offense." The commentary states that an acceptance-of-responsibility reduction and obstruction-of-justice enhancement should be applied in tandem only in "extraordinary cases." United States Sentencing Guidelines § 3E1.1 cmt. n.4 (Nov. 2008). It is also a "rare situation[]" for a defendant to proceed to trial and be entitled to an acceptance-of-responsibility reduction. Id. § 3E1.1 cmt. n.2.

It was not clear error for the district court to find that Knight had not accepted responsibility. In United States v. Gonzalez, we held that a district court did not clearly err when it denied a reduction where the defendant challenged the admissibility of evidence and pursued a bench trial instead of a guilty plea: "By challenging the admissibility of the essential evidence against him, [the defendant] attempted to avoid a determination of factual guilt and to thereby escape responsibility for his crime." 70 F.3d 1236, 1238–40 (11th Cir. 1995) (per curiam). The same reasoning applies to Knight's request. Although Knight stipulated to the elements of his crime, he did so on the eve of a bench trial and after unsuccessfully moving to suppress the evidence against him. The district court was entitled to find that Knight had not accepted responsibility.

25

2.  The District Court Did Not Err When It Calculated Knight's Criminal History Category.

The district court correctly determined Knight's criminal history category. Knight was arrested for possession of crack cocaine with intent to distribute, and his probation was revoked for an earlier conviction for possession of marijuana. Although the crack cocaine offense and the probation revocation occurred on the same day, the Guidelines instruct that a revocation should be added to the original offense and counted separately from the offense leading to the revocation: "In the case of a prior revocation of probation . . . add the original term of imprisonment to any term of imprisonment imposed upon revocation." U.S.S.G. § 4A1.2(k)(1). "If, . . . at the time of revocation another sentence was imposed for a new criminal conviction, that conviction would be computed separately from the sentence imposed for the revocation." Id. § 4A1.2 cmt. n.11. The district court correctly added three history points for Knight's conviction for possession of marijuana and corresponding revocation of probation and three history points for his conviction for possession of crack cocaine.

3.  The District Court Erred When It Denied Knight's Request To Credit the Time Knight Had Served in State Custody.

The district court erred when it did not reduce Knight's sentence for the time Knight served in state custody for obstruction of justice. The Guidelines instruct

that where a defendant has a prior offense that is relevant to the instant offense and resulted in an increase in the offense level of the instant offense, the district court should (1) "adjust the [instant] sentence for any period of imprisonment already served on the undischarged term of imprisonment [for the prior offense] if the court determines that such period of imprisonment will not be credited . . . by the Bureau of Prisons"; and (2) order that the instant sentence run concurrently with the sentence for the prior offense. U.S.S.G. § 5G1.3(b). The Bureau of Prisons will not credit Knight's time served in state custody under the statute that governs the Bureau:

> **Credit for prior custody.**–A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–(1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

18 U.S.C. § 3585(b).

The United States concedes that the district court should have given Knight credit for the time served in state custody based on his conviction for obstruction of justice. The conduct related to the state conviction was used to enhance Knight's federal sentence, but Knight's time served in state custody will not be credited by the Bureau of Prisons toward Knight's federal sentence. We vacate

27

Knight's sentence and remand with instructions that the district court adjust Knight's sentence for time served in state custody for his conviction for obstruction of justice.

## IV. CONCLUSION

We **AFFIRM** Knight's conviction, **VACATE** his sentence, and **REMAND** to the district court with instructions to reduce Knight's sentence based on the time he served in state custody.