[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15208
Non-Argument Calendar

_____

D.C. Docket No. 1:14-cr-00082-KD-B-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JULIO ALICEA APONTE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(October 26, 2016)

Before JORDAN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Julio Aponte appeals the denial of his motion to suppress after being

convicted of possession with intent to distribute heroin.  Police found heroin in

Aponte's luggage after obtaining his consent to search the vehicle he had been driving, which, at the time, was disabled on the side of an interstate highway. Aponte argues that his consent was invalid because he was unlawfully detained without reasonable suspicion.    After conducting two hearings on Aponte's suppression motion, the district court found that he was not detained; that if he was, his detention was supported by reasonable suspicion; and that his consent was valid.  The court therefore denied the motion to suppress.  After careful review, we affirm Aponte's conviction.

## I.  BACKGROUND

### A.    *Procedural History*

A federal grand jury indicted Aponte on one count of possession with intent to distribute 118 grams of heroin, in violation of 21 U.S.C. § 841(a)(1).  Aponte filed a motion to suppress the heroin.  He argued that what started out as a consensual encounter—a motorist assist by a state trooper—transformed into an investigatory detention for which reasonable suspicion was required but lacking. The district court held an evidentiary hearing and orally denied the motion for reasons stated on the record.  Following a bench trial, Aponte was convicted and sentenced to 60 months' imprisonment.

On appeal, we issued an order remanding the case for the limited purpose of allowing the district court "to make additional factual findings, with particular

2

emphasis on whether Aponte was seized and, if so, when, as well as what facts were known to the trooper at that time." *United States v. Aponte*, No. 14-15208, order at 10 (11th Cir. July 22, 2015). We took this action because we needed sufficiently detailed factual findings as to whether and, if so, when Aponte was seized, without which we could not properly review the district court's conclusions of law. *Id.* at 7–8. As allowed by our order, the district court on remand held another evidentiary hearing and issued an order denying Aponte's motion to suppress.[1] We then asked the parties to re-brief the appeal in light of the second evidentiary hearing and the district court's order on limited remand.

## B.    *District Court's Factual Findings*

On the morning of March 31, 2014, Brandon Christen, an Alabama State Trooper, was patrolling Interstate 10 eastbound in Baldwin County, Alabama, when he observed a maroon SUV on the emergency shoulder with its flashers on. Inside the SUV were Aponte and two passengers. Christen pulled over behind the SUV to assist at around 9:50 a.m. When Christen approached the passenger side of the SUV and asked what the problem was, the front-seat passenger said that the

---

[1] Aponte objected in the district court and "continues to object" on appeal to the second evidentiary hearing, which, in his view, improperly gave the government a second bite at the apple. However, he raises this issue only in passing in a footnote of his new brief, so we conclude that he has abandoned this issue by not adequately raising it on appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("A party fails to adequately brief a claim when he does not plainly and prominently raise it, for instance by devoting a discrete section of his argument to those claims." (internal quotation marks omitted)).

SUV had a flat tire and that he was on the phone with AAA.  Christen told him the mile-marker number.

While speaking with the front-seat passenger, Christen observed Aponte, who was in the driver's seat, attempting to light a cigarette.  Aponte's hands were trembling, which Christen found suspicious given the benign basis for the trooper's presence.  Christen asked the occupants for identification, which they provided. Christen then asked Aponte "in an everyday, conversational tone if he would 'mind having a seat' in the patrol car."  Christen did not display his weapon, touch Aponte, or issue commands.  Aponte exited the SUV without objection, walked to the patrol car, and sat in the front-passenger seat.  The passenger door remained unlocked at all times.  Christen sat in the driver's seat.

Once inside the patrol car, Christen began checking the three licenses. Christen ran two separate checks, one with his computer through the National Crime Information Center ("NCIC"), which was finished in a matter of minutes and came back negative, and one by phone through the Blue Lightning Operations Center ("BLOC"),[2] which took longer.

---

[2] According to Christen's testimony at the second evidentiary hearing, a BLOC check reveals more in-depth information regarding an individual's criminal history and can take up to 20–25 minutes because it is a nationwide service.  In his new brief, Aponte makes some statements suggesting that Christen's credibility is "strained" because the BLOC records check was not mentioned at the first evidentiary hearing and was not in Christen's contemporaneous police reports.  Though we, too, find these omissions noteworthy, the district court was in the best position to determine witness credibility, and Aponte has not adequately raised the issue on appeal. *See Sapuppo*, 739 F.3d at 680–81.

Meanwhile, Christen engaged Aponte in conversation about his travel plans. Aponte, who is from Puerto Rico, spoke broken English, but, according to Christen, they had no trouble communicating with each other. Aponte explained that the two passengers were distant friends who had driven from Tampa, Florida, to pick him up in Houston, Texas. Upon picking him up, they had turned around almost immediately to head back to Tampa. Christen found it suspicious that distant friends would travel so far to pick someone up and then immediately turn around. While in the patrol car, Christen observed that Aponte continued to exhibit extreme nervousness, comparable, in Christen's view, to someone involved in criminal activity, including trembling hands, a pulsing carotid artery in his neck, and a crackling voice. According to Christen, Aponte's nervousness became so acute that he had to leave the patrol car to vomit. When he was finished, Aponte returned to the front-passenger seat of the patrol car.

After hearing Aponte's travel story and watching him vomit, Christen called for backup. Another officer arrived on the scene at around 10:04 a.m. Christen received the BLOC report sometime between 10:10 a.m. and 10:15 a.m. Though nothing came back on Aponte, the BLOC report reflected that the two passengers had prior arrests for trafficking heroin.

Thereafter, Christen requested and obtained permission from Aponte to search the SUV. Christen returned Aponte's identification to him at some point

before asking for consent.  Christen also obtained consent to search the vehicle from each of the two passengers, who were still sitting in the SUV waiting for AAA assistance.  Christen then had his canine partner conduct an exterior sniff of the vehicle.  The drug-detention dog alerted to the back of the vehicle, leading to the discovery of some luggage with three plastic bags containing a gray substance.  Christen asked Aponte what the substance was, and Aponte responded that it was heroin.  Aponte and the two passengers were arrested.  Throughout these events, no tow truck or repair vehicle had appeared and the SUV remained disabled.

## C.    District Court's Legal Conclusions

After receiving briefing from the parties following the second evidentiary hearing, the district court issued an order denying the motion to suppress.  The court offered three grounds for denying the motion to suppress.

First, the district court concluded that Aponte was not seized until the point he was arrested after the discovery of the heroin.  Discussing the relevant factors for distinguishing a seizure from a consensual encounter, as identified by this Court in *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011), among other cases, the court determined that a reasonable person would have felt free to terminate the encounter with Trooper Christen.  The court found that Christen was the only officer present for most of the time; Christen did not display a weapon or touch Aponte; Christen used a conservational, non-threatening tone of voice when

6

conversing with Aponte; Aponte's path was never blocked or impeded; Aponte, "whatever his education, intelligence and first language, readily understood Christen"; and the length of the encounter and Christen's questioning were both short. The fact that Christen retained Aponte's driver's license was not dispositive of whether Aponte was seized, the court found, because the SUV was immobile and Aponte could not have driven away.

Second, the district court determined that, even though no detention occurred, reasonable suspicion to detain Aponte arose during the events in the patrol car. Specifically, the court found that Aponte's suspicious travel story, which was "perfectly consistent with a drug run," plus his extreme nervousness, including vomiting, were sufficient to give Christen a reasonable basis for suspecting Aponte of criminal activity. *Id.* at 8.

Finally, the district court determined that Christen was independently authorized to conduct a search of the SUV because the two other passengers had consented to the search. One of the passengers stated that the SUV was owned by his girlfriend. In so finding, the court determined that Christen would have asked the passengers for consent to search regardless of whether Aponte had exited the SUV.

7

## II.  STANDARD OF REVIEW

The denial of a motion to suppress presents mixed questions of law and fact. *United States v. Knight*, 562 F.3d 1314, 1322 (11th Cir. 2009).  "We review findings of fact for clear error, and we review *de novo* the application of law to those facts."  *Id.*  We construe all facts in the light most favorable to the government, the prevailing party below.  *Jordan*, 635 F.3d at 1185.

## III.  DISCUSSION

The Fourth Amendment prohibits "unreasonable searches and seizures," U.S. CONST. amend. IV, and, in general, evidence seized in violation of the Fourth Amendment must be suppressed.  *Jordan*, 635 F.3d at 1185.  To trigger Fourth Amendment scrutiny, then, a "search" or "seizure" must have occurred.  Otherwise, the encounter is "consensual" and does not implicate the Fourth Amendment.  *See id.* at 1185–86.  "A seizure under the Fourth Amendment happens when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen."  *United States v. Franklin*, 323 F.3d 1298, 1301 (11th Cir. 2003).

We have categorized police-citizen encounters into three types: (1) consensual encounters; (2) brief seizures or investigatory detentions; and (3) full-scale arrests.  *Jordan*, 635 F.3d at 1185.  So long as the encounter is consensual, officers may ask questions of individuals, ask to examine an

individual's identification, and request consent to search without implicating the Fourth Amendment. *Florida v. Bostick*, 501 U.S. 429, 437, 111 S. Ct. 2382, 2388 (1991) (stating that these actions are permissible "as long as the police do not convey a message that compliance with their requests is required"). The test for distinguishing a consensual encounter from a seizure or an arrest is whether "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *United States v. Drayton*, 536 U.S. 194, 202, 122 S. Ct. 2105, 2111 (2002) (internal quotation marks omitted). This test "is objective and presupposes an *innocent* person." *Id.* (internal quotation marks omitted; emphasis in original). If a reasonable person would feel free to terminate the encounter, no seizure has occurred, and the Fourth Amendment is not implicated.

To determine whether an encounter is consensual or coercive, courts must consider "all the circumstances surrounding the encounter." *Id.* at 201, 122 S. Ct. at 2111 (quotation marks omitted). These circumstances include

> whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police.

*Jordan*, 635 F.3d at 1186 (quoting *United States v. Perez*, 443 F3d 772, 778 (11th Cir. 2006)); *see also Drayton*, 536 U.S. at 203–05, 122 S. Ct. at 2112–13 (discussing similar factors). These factors are not exhaustive and are not meant to

be applied rigidly. *Jordan*, 635 F.3d at 1186. Rather, they are simply guidance for the holistic inquiry into whether a reasonable person would feel free to decline the officers' requests or terminate the encounter. *Id.*

Regarding the second category of police-citizen encounters, brief seizures and investigatory detentions, the Fourth Amendment permits an officer "to conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S. Ct. 1868, 1879 (1968)). "Reasonable suspicion is a less demanding standard than probable cause, but requires 'at least a minimal level of objective justification for making the stop.'" *Franklin*, 323 F.3d at 1301 (quoting *Wardlow*, 528 U.S. at 123, 120 S. Ct. at 676). Courts "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750 (2002) (internal quotation marks omitted).

Initially, there is no dispute that the encounter between Trooper Christen and Aponte began consensually—this was not a traffic stop, but a motorist assist unrelated to investigatory activity. *Cf. Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S. Ct. 2523, 2528 (1973) (noting that state police officers may have substantial contact with citizens on public highways as part of exercising "community

caretaking functions"). Aponte and his two passengers were in a disabled vehicle on the side of a public interstate highway, and Christen stopped to offer assistance. Therefore, our inquiry is whether, in view of the totality of the circumstances, the consensual encounter became a brief seizure or investigatory detention and, if so, when. If so, we must then ask whether reasonable suspicion justified the inception and length of the seizure. The answers to these questions, in turn, determine the validity of Aponte's consent to search.

Aponte primarily contends that he was seized at the point when Christen asked for and retained his driver's license and then asked him to sit in the patrol car. Indeed, this Court has recognized that, while no one factor is dispositive, "retention of documents such as a driver's license and an airline ticket has been treated as highly significant on the question of whether a seizure has occurred." *United States v. Chemaly*, 741 F.2d 1346, 1352 (11th Cir. 1984). For example, in *United States v. Thompson*, we held that a seizure occurred when an officer, who had approached the defendant's car on foot while it was parked in an airport parking lot, asked for and retained the defendant's driver's license while questioning the defendant. 712 F.2d 1356, 1358–60 (11th Cir. 1983). We held that a reasonable person would not have felt free to terminate the encounter because if the defendant "had tried to drive away he could have been arrested for driving without a license." *Id.* at 1360.

11

By contrast, in *United States v. De La Rosa* we held that an officer's retention of the defendant's driver's license did not result in a seizure where the defendant had returned home for the evening and was not anticipating using the car in the near future. 922 F.2d 675, 678 (11th Cir. 1991). Officers had followed the defendant to his apartment and, after he parked, approached the defendant and asked for his identification. *Id.* at 677. Before returning the defendant's license, an officer asked for and received permission to search the defendant's vehicle, where the officer found a notebook related to narcotics transactions. *Id.* We held that a reasonable person would have felt free to leave in these circumstances, distinguishing *Thompson* on grounds that, unlike the defendant in *Thompson*, the defendant in *De La Rosa* "had already exited his vehicle and was proceeding toward his home for the evening. Thus, temporary retention of the license did not preclude [the defendant] from terminating the encounter by going into his apartment." *Id.* at 678 & n.2.

Here, we agree with the district court that, based on its factual findings, Aponte was not "seized" within the meaning of the Fourth Amendment at any time before giving his consent to search the SUV. The court correctly found that, because the SUV was disabled at the time of the encounter and no tow truck had arrived, the circumstances were much closer to those in *De La Rosa* than to those in *Thompson*. Unlike the defendant in *Thompson*, Aponte could not have simply

attempted to terminate the encounter by driving away because the SUV was disabled. Instead, like the defendant in *De La Rosa*, a reasonable person in Aponte's position would have felt free to end the encounter without his license, remain in (or return to) the SUV, and wait for AAA assistance, as he would have done regardless of whether his driver's license was temporarily retained.

Though Trooper Christen's retention of Aponte's license was accompanied by his asking Aponte to have a seat in the patrol car, our review of the other relevant factors indicates that Aponte was free to refuse Christen's request. Christen was the only officer present during the initial stages of the encounter, he spoke in relaxed and conversational speech, he did not raise his voice, and he phrased his inquiries as requests rather than demands. He also did not display his weapon, touch or pat down Aponte, act in an intimidating manner, or tell Aponte to sit in the back of the patrol car. Thus, the facts show that Aponte was free to refuse Christen's request to sit in the front seat of the patrol car, and that his decision to do so was voluntary and not mere submission to a show of authority.

Furthermore, the events in the patrol car do not undermine our conclusion that the encounter was consensual. Christen engaged in some limited discussion with Aponte about his travel plans, but he did not ask Aponte about criminal activity or directly suggest that Aponte was being investigated for wrongdoing. Moreover, as the district court found, the length of any questioning was short—the

district court noted that Christen's similar questioning of the other occupants "lasted barely 40 seconds"—and there was no evidence that any other matter was discussed.  In addition, the patrol car was unlocked, so Aponte was able to open the door and leave, as he did when he needed to vomit.  And, while Aponte spoke in broken English, the district court credited Christen's testimony that he and Aponte had no trouble communicating with each other.  Aponte disputes that finding, but we find nothing in the video evidence that shows that the district court clearly erred.  Finally, Christen returned Aponte's license before asking for his consent to search the vehicle, which, in other circumstances, we have found relevant to whether an encounter is consensual.  *Cf. United States v. Ramirez*, 476 F.3d 1231, 1239–40 (11th Cir. 2007) (holding that the return of a defendant's driver's license after a traffic stop can convert what was a brief seizure into a consensual encounter, even where the officer questions the defendant about criminal activity immediately thereafter).

Taken together, the circumstances show that, despite Trooper Christen's retention of Aponte's driver's license, his request to have Aponte sit in the front seat of the patrol car, and his questioning of Aponte about his travel plans in the patrol car, a reasonable person in Aponte's position would have felt free to refuse the officer's requests or otherwise terminate the encounter with the officer.  *See Drayton*, 536 U.S. at 202, 122 S. Ct. at 2111; *De La Rosa*, 922 F.2d at 678.

14

Therefore, the encounter was consensual, no seizure occurred, and Aponte's subsequent consent to search was not the product of an unlawful detention. Because we conclude that no seizure occurred, we do not address the district court's alternative grounds for denying the motion to suppress.

Finally, Aponte argues that Trooper Christen violated *Miranda*[3] and *Missouri v. Seibert*[4] by questioning him about the gray substance found in his luggage.[5] We have held that *Seibert* prohibits officers from using a "two-step interrogation technique . . . in a calculated way to undermine the *Miranda* warning." *United States v. Street*, 472 F.3d 1298, 1313–14 (11th Cir. 2006) (quoting *Seibert*, 542 U.S. 600, 622, 124 S. Ct. 2601, 2616 (2004) (Kennedy, J., concurring in result)) (noting that Justice Kennedy's concurrence is controlling because *Seibert* was a plurality decision and Justice Kennedy concurred in the result on the narrowest grounds). As we explained in *Street*,

> That means that if an officer employs a strategy of deliberately questioning an in-custody suspect without any *Miranda* warnings in order to get a confession, planning to later warn the suspect and get him to repeat his confession, the post-warning confession is inadmissible unless the officer took specific curative steps to ensure that the mid-interrogation warnings achieved the purpose the *Miranda* decision intended.

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).
[4] *Missouri v. Seibert*, 542 U.S. 600, 124 S. Ct. 2601 (2004).
[5] This issue was raised in Aponte's initial brief after the first evidentiary hearing and, though it was not raised in his new brief following the second evidentiary hearing, it does not appear that he intended to abandon this issue.

*Id.* at 1314.

Here, no violation of *Seibert* or *Miranda* occurred.  Trooper Christen asked a single question about the gray substance because, he said, he did not know what it was and was concerned it might be dangerous.  After Aponte responded that it was heroin, Christen ceased questioning Aponte at the scene.  Christen did not use a "two-step interrogation technique" in a calculated way to undermine *Miranda*.  *See Street*, 472 F.3d at 1313–14.  The purpose of the question was to ensure officer safety, not to elicit a confession.  *See United States v. Newsome*, 475 F.3d 1221, 1224–25 (11th Cir. 2007) ("The public safety exception allows officers to question a suspect without first Mirandizing him when necessary to protect either themselves or the general public.").  The district court properly rejected this claim in denying the motion to suppress.

## IV.

For the reasons stated, the district court did not err in denying Aponte's motion to suppress.  Accordingly, we affirm Aponte's conviction.

**AFFIRMED.**

16