[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14168
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cr-20151-DMM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TANIESHA THELMA STUART,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 30, 2019)

Before JILL PRYOR, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Taniesha Stuart appeals her 60-month sentence for unlawful possession of mail, intentional possession of 15 or more unauthorized access devices, and aggravated identity theft.  Stuart argues that the district court improperly applied a two-level enhancement for production of an unauthorized access device and improperly failed to apply a two-level reduction for acceptance of responsibility.

I.

In April 2017, Miami police pulled Stuart over for driving a stolen car. Stuart's codefendant, Mildred Sawyer, was a passenger in the car at the time. Officers searched the stolen car and found 16 pieces of mail belonging to 4 different individuals.  Law enforcement agents contacted two of those individuals, who stated that they did not know Stuart and had not given her, or anyone else, permission to possess their mail.  Stuart gave the arresting officers a false name and identification and provided a second false name to the booking officer but was eventually identified through fingerprint analysis.

Two months later, Aventura police stopped Stuart and Sawyer in another stolen car.  This time, Sawyer was driving.  Officers searched the vehicle and found a Louis Vuitton bag containing several purchase receipts from retail stores, several pieces of mail addressed to Stuart, and a Club Calder card in Stuart's name. They also found a backpack containing (1) Florida state benefits cards for both Stuart and Sawyer, and Sawyer's Florida identification card; (2) more than 100

pages of personal identification information ("PII") of patients from two local hospitals; (3) multiple pages of handwritten or typed names, dates of birth, and Social Security numbers; (4) several credit cards not in Sawyer or Stuart's name, including a Capital One card bearing the name of a victim referred to as S.J.; and (5) another Capital One credit card assigned to the same account as the one in S.J.'s name but embossed with Sawyer's name. The glove compartment contained several more retail receipts, including a receipt for a $2573.35 purchase from Louis Vuitton that was made using a Visa credit card bearing S.J.'s name. In total, police recovered 17 credit cards and the PII of 221 individuals.

Law enforcement contacted several hospital patients whose PII was recovered from the stolen car. The patients stated that they did not know Stuart or Sawyer and had not given either of them permission to possess their PII. Capital One contacted S.J. and learned that she had never applied for the Capital One credit card account and had not authorized Sawyer as a secondary user on the account. The account had been opened using Capital One's online portal and a false email address for S.J.

A federal grand jury returned a seven-count indictment against Stuart and Sawyer. Stuart entered an unconditional guilty plea to three counts: possession of stolen mail, in violation of 18 U.S.C. § 1708; intentionally possessing 15 or more unauthorized access devices (Social Security numbers and credit card account

numbers issued to others), in violation of 18 U.S.C. § 1029(a)(3); and, in connection with her violation of § 1029(a)(3), aggravated identity theft—that is, knowingly transferring, possessing, and using the Capital One credit card account number issued to S.J., in violation of 18 U.S.C. § 1028A(a)(1).

After her arrest and indictment, Stuart was released on bond with certain conditions, including a requirement that she submit to substance abuse testing and treatment. She was diagnosed with a moderate cannabis use disorder and referred to group substance abuse treatment. While on bond—both before and after entering her guilty plea—Stuart tested positive multiple times for marijuana use. Several other test results were classified as invalid because the samples were diluted. In response to the probation officer's recommendation to revoke Stuart's bond, the district court modified the conditions of release to add individual counseling and increase the frequency of the treatment sessions that Stuart had to attend, but she continued to test positive and began missing treatment sessions as well.

At sentencing, over Stuart's objections, the district court applied an enhancement for offense conduct involving the production of an unauthorized access device, finding that Stuart was responsible for Sawyer's production of an unauthorized credit card in Sawyer's name as a foreseeable act within the scope of their jointly undertaken criminal activity. The district court also declined to apply

4

any offense-level reduction for acceptance of responsibility, noting that although the court typically did not refuse the reduction because of pretrial-release marijuana use, the "diluted specimen, the failure to attend treatment, and the number of occasions are remarkable." The court further explained that Stuart had shown no signs of trying to change her behavior. The court sentenced Stuart to 60 months' imprisonment followed by a three-year term of supervised release.

## II.

We review the district court's factual findings, including the court's determination of the scope of the defendant's relevant conduct for sentencing purposes, for clear error. *See United States v. Siegelman*, 786 F.3d 1322, 1332 (11th Cir. 2015). The district court's determination of whether the defendant has accepted personal responsibility for her crimes is a factual finding reviewed under the clear-error standard. *United States v. Williams*, 627 F.3d 839, 844 (11th Cir. 2010). We review the court's interpretation of the Sentencing Guidelines and its application of the Guidelines to the facts de novo. *United States v. Mathews*, 874 F.3d 698, 704 n.3 (11th Cir. 2017); *United States v. Docampo*, 573 F.3d 1091, 1096 (11th Cir. 2009).

## III.

Under U.S.S.G. § 2B1.1(b)(11)(B)(i), the defendant's Guidelines offense level is increased by two levels if the offense involved the production or trafficking

of an unauthorized access device. "Access devices" include cards, account numbers, personal identification numbers (such as Social Security numbers), or other means of account access that can be used "to obtain money, goods, services, or any other thing of value." 18 U.S.C. § 1029(e)(1); *see* U.S.S.G. § 2B1.1, cmt. n. 10(A). An access device is "unauthorized" if it was stolen or obtained with intent to defraud. 18 U.S.C. § 1029(e)(3). "'Production' includes manufacture, design, alteration, authentication, duplication, or assembly." U.S.S.G. § 2B1.1, cmt. n. 10(A) (bold font omitted). The Guidelines definition of "production" "clearly encompasses a wide range of behaviors," including "a situation in which a defendant willfully causes or induces an innocent third party," such as a bank, to produce a credit card. *United States v. Taylor*, 818 F.3d 671, 678–79 (11th Cir. 2016).

For purposes of determining whether a Guidelines enhancement applies, a defendant's "offense" includes the offense of conviction and all relevant conduct. U.S.S.G. § 1B1.1, cmt. n. 1(I). Relevant conduct, in turn, includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant," as well as the reasonably foreseeable acts of others in furtherance of "jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy)." *Id.* § 1B1.3(a)(1)(A)–(B).

6

To determine whether a defendant is accountable for the conduct of a codefendant, the sentencing court "must first make individualized findings concerning the scope of criminal activity undertaken by a particular defendant." *United States v. Hunter*, 323 F.3d 1314, 1319 (11th Cir. 2003).  "In determining the scope of the criminal activity, the district court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others."  *United States v. Petrie*, 302 F.3d 1280, 1290 (11th Cir. 2002) (citation and quotation marks omitted).  Once the court has determined the scope of the jointly undertaken criminal activity, it should "then consider the conduct of others that was both in furtherance of, and reasonably foreseeable in connection with" such activity.  *Id.* (citation and quotation marks omitted).

Stuart argues that the district court erred in applying the § 2B1.1(b)(11) production enhancement based on the issuance of a secondary-user credit card in Sawyer's name.  She contends that her sentence should be vacated because the district court failed to make individualized findings as to the scope of the criminal activity that she agreed to undertake with Sawyer, and that the evidence does not support a finding that she agreed to or participated in anything more than the possession and use of unauthorized access devices.  We disagree.

As we have said before, "there is no clear error in cases in which the record supports the district court's findings."  *Petrie*, 302 F.3d at 1290.  Accordingly, "if

7

the record supports the court's determination with respect to the offense conduct, including the imputation of others' unlawful acts to the defendant[]," the "sentencing court's failure to make individualized findings regarding the scope of the defendant's activity is not grounds for vacating a sentence." *United States v. Baldwin*, 774 F.3d 711, 730 (11th Cir. 2014) (quoting *Petrie*, 302 F.3d at 1290). Here, the record supports the district court's conclusion that the production of the Capital One credit card in Sawyer's name should be attributed to Stuart as "a jointly undertaken criminal activity under the related conduct provisions."

According to the presentence investigation report's role assessment—to which Stuart raised no objection—Stuart and Sawyer "jointly conspired in this case to possess the personal means of identification corresponding to other individuals without their consent. Thereafter, they fraudulently obtained credit cards and proceeded to make fraudulent purchases with these credit cards."[1] These facts, along with Stuart's admitted joint possession of more than 200 victims' PII and 17 unauthorized credit cards, support a fair inference that Stuart and Sawyer agreed to use the stolen PII to obtain unauthorized credit cards by applying for them in their victims' names or in their own names—that is, by causing or inducing "an innocent third party to create the fraudulent device at the defendant's behest."

---

[1] "A sentencing court's findings of fact may be based on undisputed statements in the PSI." *United States v. Bennett*, 472 F.3d 825, 832 (11th Cir. 2006) (per curiam); *see also Baldwin*, 774 F.3d at 727.

*Taylor*, 818 F.3d at 678.  Two of the unauthorized credit cards jointly possessed by the defendants—the Capital One cards bearing S.J.'s name and Sawyer's name— evidently were obtained in just that manner.  And by signing the factual proffer in connection with her guilty plea, Stuart admitted to knowingly using the Capital One credit card that had been issued in S.J.'s name.  All of this evidence supports a finding that the "production" of one or more of the credit cards Stuart possessed, including the production of the card bearing Sawyer's name, was (1) "within the scope" of the criminal activity that Stuart agreed to undertake, (2) "in furtherance of the jointly undertaken criminal activity," and (3) "reasonably foreseeable in connection with that criminal activity."  U.S.S.G. § 1B1.3(a)(1)(B).  Consequently, the district court did not clearly err in finding that Stuart's offense involved the production of an unauthorized access device and did not err in applying the corresponding sentence enhancement.

## IV.

Stuart also argues that the district court erred in refusing to reduce her Guidelines offense level for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.  For the first time on appeal, Stuart contends that the court improperly relied on an unproven allegation that she had assaulted someone with a baseball bat while on pretrial release as the basis for denying the § 3E1.1 reduction.  Although the district court explicitly stated that it was denying the reduction because of

9

Stuart's continued illegal drug use—and *not* because of the alleged assault—Stuart contends that the fact that the district court granted the Guidelines reduction to Sawyer, who also tested positive for marijuana on several occasions while out on bond, shows that the assault incident was the court's real reason for denying the reduction in her case. But there were other differences. According to the PSI and its addenda, Stuart tested positive for marijuana use 11 times after her change-of-plea hearing, and when confronted about her continued drug use, she denied it. Stuart also missed two treatment sessions and failed to appear for a scheduled drug test. Sawyer tested positive twice after entering a guilty plea, admitted her marijuana use, and subsequently modified her behavior, as shown by the negative urinalysis results thereafter.[2]

"The sentencing court may consider a broad variety of evidence when considering whether to grant an acceptance-of-responsibility reduction, including whether the defendant has voluntarily withdrawn from criminal conduct. A district court does not err in denying the reduction if it concludes that a defendant's drug use after his arrest shows that he has not accepted responsibility and turned away from the lifestyle that motivated his offense." *Mathews*, 874 F.3d at 709 (internal citation omitted). This Court has affirmed the denial of an adjustment for

---

[2] Sawyer's test results are not part of the record on Stuart's appeal. Our understanding of this history comes from the government's statement of facts, which Stuart did not contest.

acceptance of responsibility based on a single positive drug test showing that the defendant used marijuana after his conviction for an unrelated crime (tax fraud). *See United States v. Pace*, 17 F.3d 341, 344 (11th Cir. 1994). We reiterate that a district court's finding as to whether a defendant has accepted personal responsibility for her crimes "is entitled to great deference on review and should not be disturbed unless it is without foundation." *United States v. Knight*, 562 F.3d 1314, 1322 (11th Cir. 2009) (citation omitted). Here, the sentencing court found that Stuart had not accepted responsibility based on the fact that she had "continued to use marijuana, failed to abide by her treatment requirements, submitted a diluted urine test, and showed no signs of trying to change her [sic] or modify her behavior." This finding was not without foundation, and we decline to second-guess it. Furthermore, the sentencing court stated on the record that it had not considered the baseball-bat incident in making its determination. Stuart did not question the court's statement at the time, and we see no reason to question it now.

## V.

For the foregoing reasons, Stuart's convictions and sentences are **AFFIRMED.**

11